IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RODERICK SAMS, AIS # 115103,** : | |
| Plaintiff, : | |
| vs. : | CIVIL ACTION 05-0160-BH-C |
| **SHANNON YOUNG, et al.,** : | |
| Defendants. : | |

**REPORT AND RECOMMENDATION**

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). It is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

**I. Complaint (Doc. 4).**

On February 23, 2005, plaintiff was found guilty in a disciplinary proceeding for fighting with a weapon. (Docs. 4 & 8 (disciplinary report)) Plaintiff was sentenced to 45 days in disciplinary segregation and to 90 days' loss of store, phone, and visiting privileges, and was referred for a custody review. (Doc. 8) As a result of this disciplinary, plaintiff filed this action against Officer Shannon Young and Officer Jimmie

Kilcrease. Plaintiff wants the disciplinary removed from his institutional file, $27,000 from each defendant, and court costs.

Plaintiff alleges the following concerning his disciplinary. (Doc. 4) Defendant Young falsely charged him with fighting with a weapon based on a confidential informant's information that he was fighting with inmate Tommie Cochran. (Doc. 4) Plaintiff maintains that inmate Cochran hit his head, cutting himself above his right eye, as a result of a blackout caused by his high blood pressure, diabetes, or other health problems. Plaintiff claims that he was trying to help inmate Cochran

However, plaintiff states that he was picking up trash around Officer James Hadley's "office from 7:20 a.m. to 7:35 a.m. when the incident happen[ed]," which plaintiff had verified by another officer who called Mr. Hadley. Plaintiff maintains that no corrections officers were on the ball yard where the incident was to have occurred. In addition, plaintiff claims that defendant Kilcrease gave "false testimony and change (sic) statement in one of my witness testimony."

The disciplinary report (Doc. 8) reflects inmate Marion Dent saw inmate Cochran and plaintiff talking near the shakedown shack and then inmate Dent heard a sound "like two sticks hitting together." He turned around and saw inmate Cochran walk away "holding his hands up to his face and head." He did not think that they acted like they were mad. Defendant Young testified that he received information from a confidential informant, who, in the past, had provided information and had been a very reliable source, that plaintiff was fighting inmate Cochran and struck inmate Cochran with a broom

2

handle.  Plaintiff testified that he could not have been there as he was playing cards with inmate Marion Dent and was locked up in segregation at 7:50 a.m.  Officer Hadley testified that the only time he saw plaintiff was when plaintiff was picking up trash around his office from 7:20 a.m. to 7:35 a.m. and that he did not see the incident.  Officer Jerome Webster testified that he saw plaintiff go out of the old jail at check out time and he called Officer Hadley to be sure that plaintiff reported to work, which plaintiff had.

The hearing officer, defendant Kilcrease, found plaintiff guilty, stating: "On 2/16/05 at approximately 8:45 a.m. in the ball yard area of Holman Unit, inmate Roderick Sams ...did violate rule #34, Fighting with a weapon."  The basis of his finding was that defendant "Young, who stated under oath that inmate Roderick Sams was in a fight with inmate Tommie Cochran.  Inmate Sams did strike inmate Cochran with a broken broom handle."

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B).[1]  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989).  A claim is frivolous as a

---

[1]The predecessor to this section is 28 U.S.C. § 1915(d).  Even though Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered.  *See Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir.), *cert. denied,* 534 U.S. 1044, 122 S.Ct. 624 (2001); *Brown v. Bargery*, 207 F.3d 863, 866 n.4 (6th Cir. 2000).  However, dismissal under § 1915(e)(2)(B) is now mandatory.  *Bilal,* 251 F.3d at 1348-49.

matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, the claim seeks to enforce a right which clearly does not exist, *id.*, or there is an affirmative defense that would defeat the claim, such as the statute of limitations, *Clark v. Georgia Pardons & Paroles Bd.*, 915 F.2d 636, 640 n.2 (11th Cir. 1990).  Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)); *see Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997) (noting that § 1915(e)(2)(B)(ii)'s language tracks the language of Fed.R.Civ.P. 12(b)(6)).

### III.  Discussion.

Plaintiff claims that defendant Young falsely charged him with a disciplinary of fighting with a weapon based on information from a confidential informant that he was fighting with inmate Cochran and that defendant Kilcrease, the disciplinary hearing officer, changed the statement of one of plaintiff's witnesses and gave a false statement (which is presumed to be the disciplinary report).  These claims are for alleged violations of plaintiff's due process rights.  However, before plaintiff may suffer a deprivation of his due process rights, he must have an interest to which due process attaches.  *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974 (1974); U.S. CONST. AMEND. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or

property, without due process of law. . . .").

In the context of a prison disciplinary, the decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995), controls the determination of whether a prisoner has a liberty interest to which due process attaches.  In *Sandin*, the Supreme Court found that there was no right based directly on the Due Process Clause not to be placed in disciplinary segregation and that there was no state-created liberty interest to be free from disciplinary segregation when an inmate challenged his 30-day segregation sentence based on a due process violation.  *Id*. at 487, 115 S.Ct. at 2302.  In concluding that no liberty interest was implicated by placement in disciplinary segregation, and thus no due process was required, the Court stated its holding was a return to the due process principles of *Wolff*, *supra*, and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532 (1976), that required an inmate to suffer a "grievous loss" before a liberty interest would be found.  *Sandin*, 515 U.S. at 480-83, 115 S.Ct. at 2298-2300.  The *Sandin* Court ruled that future liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[2]  *Id.*

---

[2]The Eleventh Circuit in *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999), expounded on liberty interests retained by a prisoner once he is incarcerated.

> Determining whether one was deprived of liberty presents a unique
> challenge with prisoners, who are already deprived of their liberty in the
> ordinary understanding of the word.  The Supreme Court has identified
> two situations in which a prisoner can be further deprived of his liberty

at 480, 484, 115 S.Ct. at 2298, 2300.  The Court concluded that confinement to disciplinary segregation was not a dramatic departure from the ordinary conditions of incarceration, was the type of discipline a prisoner should expect as an incident to his criminal sentence, and "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  *Id.* at 485-86, 115 S.Ct. at 2301.  The Court ruled the prisoner did not have a protected liberty interest based on the subject prison regulation or the Due Process Clause itself entitling him to *Wolff*'s procedural protections.  *Id.* at 487, 115 S.Ct. at 2302.   .

Based on a reading of the Constitution, the Court finds the Constitution does not grant an inmate a right in visitation, store, and telephone privileges.  *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process

---

> such that due process is required.  The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484, 115 S.Ct. 2300; *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process).  In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state.  *Bass*, 170 F.3d at 1318.

*Id.* at 1290-91.

Clause); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as disciplinary punishment a verbal reprimand, two-week loss of commissary privileges, and a suspended, 15-day disciplinary segregation sentence); *Walker v. Loman,* 2006 WL 3327663, at *3 (M.D. Ala. Nov. 15, 2006) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest).  And the Alabama courts have determined a prisoner does not have a liberty interest in store, telephone and visitation privileges.  *Dumas v. State*, 675 So.2d 87, 88 (Ala. Crim. App. 1995).

The allegations before the Court concerning a liberty interest are Plaintiff's disciplinary sentence.  Plaintiff does not contend that he was subject to an "atypical and significant" hardship by his disciplinary sentence even though it was his burden to do so in order to establish a liberty interest to which due process attaches.  *Cf. Hynes v. Squillace,* 143 F.3d 653, 658-59 (2d Cir.), *cert. denied,* 525 U.S. 907 (1998).  Plaintiff does not allege that his confinement to segregation was a "dramatic departure from the ordinary conditions of confinement" or a "major disruption in [his] environment" or an "atypical and significant hardship." *Sandin,* 515 U.S. at 486, 115 S.Ct. at 2301.  Therefore, as alleged, his 45-day confinement to disciplinary segregation was not an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  *Id.* at 484, 115 S.Ct. at 2300.  *Compare Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir.) (finding that twelve months of solitary confinement "represent[s] substantially

more 'atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life,' [and] we assume that [a prisoner suffering such] a liberty deprivation [is] entitled to due process"), *cert. denied*, 519 U.S. 952 (1996), *with Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of constitutionally protected liberty interest).

Moreover, an inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301. The further restriction of plaintiff's visitation, store, and telephone privileges for a short period of time is a less severe punishment than confinement to disciplinary segregation. Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis. This is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence as should a change in his classification. *See Id.* at 475, 485, 115 S.Ct. at 2296, 2301.

Based upon the foregoing reasons, the undersigned finds that plaintiff has failed to establish that he has a liberty interest to which due process attaches. *Accord Ledford v. Johnson,* CA 99-0127-P-C, 2000 WL 284301, at *6 (S.D. Ala. Mar. 9, 2000) (unpublished) (finding confinement to disciplinary segregation for 35 days and loss of CIT status for the same duration, which was based solely on a confidential informant's information, "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest").

## IV.  Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this 13th day of March, 2007.


                                s/WILLIAM E. CASSADY
                                **UNITED STATES MAGISTRATE JUDGE**


## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.    *Objection*.  Any party who objects to this recommendation, or anything in it, must, within ten days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual

findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                   s/WILLIAM E. CASSADY
                                                   UNITED STATES MAGISTRATE JUDGE